Michael E. Auerbach, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue – Ste. 840
New York, NY 10170
Telephone/Fax: 347-286-7409
*Attorneys for Defendants,*
*JPMorgan Chase Bank, N.A., Kevin McHale,*
*Datwan Green, Brandon North, and Mark T. Brewer*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OFRA LEVIN AND ISAAC LEVIN,<br><br>     Plaintiffs,<br><br>     v.<br><br>J.P. MORGAN CHASE BANK, N.A., KEVIN MCHALE, DATWAN GREEN, AND BRANDON NORTH, MARK T. BREWER,<br><br>     Defendants. | ***Document filed electronically***<br><br><br>Civil Action No. 2:18-cv-03840 |

## MEMORANDUM OF LAW BY DEFENDANTS, JPMORGAN CHASE BANK, N.A., KEVIN MCHALE, DATWAN GREEN, BRANDON NORTH AND MARK T. BREWER, IN OPPOSITION TO PLAINTIFF'S MOTION

On the Brief:

Michael E. Auerbach, Esq.

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................... 1

**LEGAL ARGUMENT** .......................................................................................... 1

   **I.**     **REMOVAL WAS TIMELY PURSUANT TO 28 U.S.C. § 1446** ................... 1

   **II.**    **REMOVAL WAS PROPERLY BASED ON DIVERSITY JURISDICTION** ............................................................................................................. 4

      **A.** **The Statutory Amount in Controversy to Invoke Diversity Jurisdiction has Been Met** .................................................................................................... 4

      **B.** **The Court Should Disregard the Improperly Joined Non-Diverse Defendants and Exercise its Diversity Subject Matter Jurisdiction** ............ 7

   **III.**   **PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION** ............................................................................................ 10

   **IV.**   **PLAINTIFFS' REQUEST FOR SANCTIONS SHOULD BE DENIED BECAUSE THEY FAILED TO COMPLY WITH THE SAFE HARBOR PROVISION OF FED. CIV. P. RULE 11** ..................................................... 12

**CONCLUSION** ................................................................................................... 14

ii

# **TABLE OF AUTHORITES**

## **CASES**

*Antares Aircraft* v. *Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991) ............. 5

*Bob v. Scibal Assocs.*, 2014 U.S. Dist. LEXIS 120325, *18-19 (S.D.N.Y. February 10, 2014) ...................................................................................................... 9

*Cutrone v. Mortgage Elec. Registration Sys., Inc.,* 749 F.3d 137, 143 (2d Cir.2014)........ 3

*Georgia Malone & Co., Inc. v. Rieder*, 86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 496-97 (1st Dep't 2011) ............................................................................................ 9

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 314-15 (5th Cir. 2002) .................................................................................................. 8

*Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1327-28 (2d Cir. 1995)....................... 13

*Hutter v. Countywide Bank, N.A.,* 41 F. Supp. 3d 363, 375 (S.D.N.Y. 2014)................... 9

*In re Global Crossing, Ltd. Securities Litigation,* 221 F.R.D. 394, 396 (S.D.N.Y. 2003) 13

*Infanti v. Scharpf,* 2008 U.S. Dist. LEXIS 45501, *7 (E.D.N.Y. June 10, 2008) ........... 10

*King v. Jarrett,* 2015 U.S. Dist. LEXIS 133740 (W.D. Tex. 2015) .................................. 8

*Land* v. *Dollar*, 330 F.S. 731, 735 & n.4, 91 L. Ed. 1209, 67 S. Ct. 1009 (1947)............. 5

*Manicas vs. City of Buffalo*, 39 Misc.2d 389, 240 N.Y.S.2d 825 (1963) ........................ 12

*McCabe v. Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 91116, *6 (E.D.N.Y. July 3, 2014)............................................................................................... 10

*Moltner v. Starbucks Coffee Co.,* 624 F.3d 34, 37 (2d Cir.2010) ...................................... 2

*Murphy Bros v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (1999) ............................ 2, 3

*N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975) .............. 11

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) ...................................................................................... 3

*Otokoyama Co. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir. 1999)........... 11

*Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460-61 (2d Cir. 1998).......................... 8

*Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th Cir. 1997)  .................................. 13

*Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) .............................................. 11

*Savoy Record Co. v. Cardinal Export Corp.,* 15 N.Y.2d 1, 4, 254 N.Y.S.2d 521, 523 (1964)............................................................................................................ 9

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)........... 4, 7

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ............. 11

*Tuttle & Hughes v. Browne*, 1996 U.S. Dist. LEXIS 9555, \*5 (S.D.N.Y. July 8, 1996) ... 9

*United Food & Commercial Workers Union Local 919 v. Centermark Props. Meriden*
    *Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ......................................................... 4, 5

*Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 202 (2d Cir.2001) ............................ 2, 8

*Williams v. Int. Gun-A-Rama*, 416 Fed. Appx. 97, 99 (2d Cir. 2011) ............................. 14

*Zido v. Werner Enters., Inc., 498 F. Supp. 2d 512, 514 (N.D.N.Y. 2006)* ....................... 7

## **STATUTES**

28 U.S.C. § 1332............................................................................................................. 4, 14

28 U.S.C. § 1446..................................................................................................... 1, 2, 4, 14

## **RULES**

Fed. R. Civ. Pro. 4(a)………………………………………………………………………..... 3

Fed. R. Civ. Pro. 12(a)(1)(A). ............................................................................................ 3

Fed. R. Civ. Pro. 11.................................................................................................... 12, 13

N.Y.C.P.L.R. 312-a............................................................................................................ 4

## PRELIMINARY STATEMENT

Isaac Levin and Ofra Levin ("Plaintiffs"), the pro se plaintiffs, initiated this action in the Supreme Court of the State of New York, Nassau County, with the filing of a summons and verified complaint on or about April 9, 2018 (the "Complaint").  Plaintiffs thereafter filed an amended verified complaint on or about April 27, 2018 (the "Amended Complaint"). On July 2, 2018, defendants, JPMorgan Chase Bank, N.A. ("Chase"), Kevin McHale, Datwan Green, Brandon North, and Mark T. Brewer (collectively with Chase, the "Defendants") removed the matter to this Court based on diversity of citizenship. (Docket No. 1).

On July 30, 2018 Plaintiffs filed a motion seeking to remand the action to state court, impose a preliminary injunction on the Defendants to halt them from collecting mortgage payments, and impose sanctions on counsel for the Defendants (the "Motion"). (Docket No. 16). Plaintiffs assert that removal was untimely and that diversity jurisdiction does not exist. For the reasons set forth herein, Plaintiffs are incorrect in both regards, and neither a preliminary injunction nor sanctions are merited here. Defendants respectfully request that the Motion be denied.

## LEGAL ARGUMENT

## I.      REMOVAL WAS TIMELY PURSUANT TO 28 U.S.C. § 1446

Plaintiffs wrongly claim that removal was untimely because the Defendants purportedly did not file the Notice of Removal within 30 days of "receipt by the defendant through service or otherwise…" of the Complaint. (Emphasis added by Plaintiffs in the Motion, Docket No. 16, Memorandum of Law, at page 5). Irrespective of the word "otherwise" in Section 1446(b), it is generally held that service of process starts

1

the running of the 30-day period. Here, Plaintiffs admit that "Defendants counsel consented to accepting service via U.S. Mail and was duly served on June 19, 2018. On or about July 2, 2018, Defendants filed their Notice of Removal ("Removal Notice")." (Id., at page 3). Because Defendants removed the action within 30 days of consenting to service by mail, removal was therefore timely.

In pertinent part, 28 U.S.C. § 1446(b) provides:

[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

The Supreme Court has held that service of process is the essential key to the triggering the 30 day removal clock pursuant to 28 U.S.C. §1446(b), regardless of when or how a party may otherwise receive pleadings. *Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (1999). In *Murphy Bros.*, the Court clarified the now well-established rule, that "receipt [of the relevant pleadings] unattended by any formal service" would not suffice to trigger the 30–day removal period. *Id.* at 348.

Further, the Second Circuit has squarely held that, "based on the history and text of section 1446(b), and the historic function of service of process as the official trigger for responsive action by a defendant, the commencement of the removal period could only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading." *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 202 (2d Cir.2001). A defendant need not "look beyond the initial pleading for facts giving rise to removability." *Moltner v. Starbucks Coffee Co.,* 624 F.3d 34, 37 (2d Cir.2010). And, defendants have "no

independent duty to investigate whether a case is removable." *Cutrone v. Mortgage Elec. Registration Sys., Inc.,* 749 F.3d 137, 143 (2d Cir.2014).

Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant. In the absence of such service (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend. *See* Fed. Rules Civ. Proc. 4(a) and 12(a)(1)(A). Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights. *See Murphy Bros v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (1999).

Unhappy with the removal to this Court, Plaintiffs now attempt to argue that the "trigger for removal commenced on April 27, 2018 and expired on May 27, 2018" by virtue of the parties' communications with one another during the preliminary stages of the instant litigation. (Docket No. 16, Plaintiff's Memorandum of Law, at page 5). However, as the record shows, and as plead by the Plaintiffs themselves, Defendants never consented to service via email. (Id., Exh. C). On June 7, 2018, the undersigned specially instructed Plaintiffs to FedEx or mail the complete copy of the pleadings to the office of the undersigned in order to effectuate service on all Defendants. (Id., Exh. A). On June 19, 2018, Plaintiffs served copies of the pleadings on counsel for the Defendants

via mail. (Id. at page 3).[1] On July 2, 2018 Defendants removed this action to this Court. (Docket No. 1, Removal Notice).

Therefore, removal was timely pursuant to 28 U.S.C. § 1446(b).

## II.   REMOVAL WAS PROPERLY BASED ON DIVERSITY JURISDICTION

The Court has subject matter jurisdiction based on diversity and removal on that basis was therefore proper. Federal courts have original jurisdiction based on diversity where the parties are "citizens of different states" and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). As to the amount in controversy, the party asserting jurisdiction bears the "burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).

### A. The Statutory Amount in Controversy to Invoke Diversity Jurisdiction has Been Met

When, as here, the jurisdictional amount is not alleged in the plaintiff's pleading, a defendant must show "that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *United Food & Commercial Workers Union Local 919 v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

While the Amended Complaint appears to have been drafted specifically to avoid this Court's jurisdiction, there remains a "reasonable probability" that Plaintiffs' claims are in excess of the statutory jurisdictional amount. *See Centermark Props.*, 30 F.3d at

---

[1] Plaintiffs did not include either a "statement of service by mail" or "acknowledgment of receipt" pursuant to CPLR 312-a within the papers that were mailed to counsel for the Defendants. On July 2, 2018, the undersigned returned an acknowledgement to the Plaintiffs indicating receipt of service by mail. *See* Declaration of Michael E. Auerbach, Esq. in Opposition to Plaintiffs' Motion (*"Auerbach Decl,"*), Exh. 1., Acknowledgment of Service by Mail.

305. Plaintiffs' Amended Complaint is a long-winded recitation of Mrs. Levin's previous safety deposit box claims, combined with the seemingly unrelated new causes of action concerning Chase's alleged breach of a permanent Loan Modification Agreement (the "Modification") entered into by Mrs. Levin on October 31, 2013 that modified Mrs. Levin's $200,000 mortgage loan (the "Subject Loan") secured by real property located at 960 Cliffside Avenue, N. Woodmere, NY 11581 (the "Subject Property"). [2] At its essence, Plaintiffs' Modification claims are an overt expression of Plaintiffs' displeasure with the terms of the permanent Modification that Mrs. Levin voluntarily accepted in 2013. Plaintiffs now bring this action to ostensibly re-negotiate the Modification to their liking via litigation rather than compromise. To that end, Plaintiffs baldly demand "that the Current Principal Balance as of November should be set at $191,161.65 or in the alternative an accounting…" (Docket No. 1, Removal Notice, Exh. A, Amended Complaint, at ¶106). Critically, Plaintiffs do not disclaim demanding damages exceeding $75,000 in the Motion (Docket No. 16, Plaintiffs' Memorandum of Law, at page 11). Because Plaintiffs' own demand with regards to the "matter in controversy" exceeds the $75,000 threshold, jurisdiction is proper on that point.

While the Court's "amount in controversy" inquiry may end there, the Amended Complaint includes monetary demands for: "an accounting of the $21,000" that Plaintiffs claim "Defendants purposefully "set aside for future payment"; an "accounting of $24,821.86" which Plaintiffs allege is "a mix-up or just a cover up to increase the current principal balance"; reimbursement from Chase for future flood insurance premiums of

---

[2] Where the pleadings themselves are inconclusive as to the amount in controversy, federal courts may look outside those pleadings to other evidence in the record. *See Land* v. *Dollar*, 330 U.S. 731, 735 & n.4, 91 L. Ed. 1209, 67 S. Ct. 1009 (1947); *Antares Aircraft* v. *Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *vacated on other grounds*, 112 S. Ct. 3020 (1992). To that end, copies of the Note, recorded Mortgage, and Modification are annexed to the Auerbach Decl. as Exhs. 2, 3, and 4, respectively.

"almost $10k extra over the next ten years," and reimbursement "for missing cash and jewelry in the amount of $15,250, plus interest." (Docket No. 1, Removal Notice, Exh. A, Amended Complaint, ¶¶ 96, 99, 104, 108, 148). When totaled with Plaintiffs' above demand to "set the principal balance of the Modification to $191,161.65…" the amount in controversy balloons to $252,243.51, well over the statutory threshold.

In addition to monetary demands, Plaintiffs assert ten (10) individual counts against the Defendants: (1) Breach of Fiduciary Duty; (2) Violation of General Business Law (§ 349); Violation of New York Fair Debt Collection Practices Act (§ 601); (4) Breach of Contract (as to Defendant Chase Only); (5) Breach of Contract (as to Defendant Chase Only re: Plaintiffs' Safe Deposit Box); (6) Breach of Fiduciary Duty; (7) Gross Negligence (re: opening of Plaintiffs' Safe Deposit Box); (8) Violation of Right to Privacy; (9) Claim for Punitive Damages (re: opening of safe deposit box); and (10) Claim for Punitive Damages (re: failure to pay taxes and inaccurate account statements) (Counts 1-4, 10 hereinafter referred to as the "Modification Claims." Counts 5-9 hereinafter referred to as the "Safety Deposit Box Claims").[3]  The first eight (8) counts contain separate "Wherefore" clauses wherein Plaintiffs "demand judgment against Defendants in an amount to be determined at trial….and any other just relief deemed proper" while Plaintiffs' last two counts include demands for undetermined amounts of punitive damages with respect to both the Modification and Safety Deposit Box claims. It is conceivable that Plaintiffs' claims, if proven, would exceed the $75,000 threshold considering Plaintiffs explicit demands for monetary, compensatory, and punitive

[3] Mr. Levin arguably does not have Article III standing to assert any of these claims - he is not a party to the safety deposit box lease agreement – nor an authorized signer or deputy - nor is he a party to the Modification.

damages. *See Zido v. Werner Enters., Inc.,* 498 F. Supp. 2d 512, 514 (N.D.N.Y. 2006) ("Although [p]laintiffs do not specify a precise dollar amount sought . . . upon a fair reading of the [c]omplaint it appears that [p]laintiffs' claims for damages exceed seventy-five thousand dollars . . . .").[4]

Because Plaintiffs' own demands exceed the $75,000 threshold, jurisdiction is proper. Further, based on a "fair reading" of the Amended Complaint, there is a "reasonable probability" that Plaintiffs' claims are in excess of the jurisdictional amount. *See Zido* 498 F. Supp. 2d at 514*; see also Tongkook* 14 F.3d at 784.

### B. The Court Should Disregard the Improperly Joined Non-Diverse Defendants and Exercise its Diversity Subject Matter Jurisdiction

The requirement that parties be citizens of different states is also met. Plaintiffs reside in and are citizens of New York.  Chase is a national banking association with its main offices as set forth in its articles of association located in Ohio.  North resides in and is a citizen of Texas. Brewer resides in and is a citizen of Ohio. Although Green and McHale are New York residents, they are improperly joined because the causes of action are not legally viable as to them so this Court should disregard their citizenship in determining the existence of diversity jurisdiction.

"[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy."  *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460-61 (2d Cir. 1998).

---

[4] Plaintiffs previously filed an action in Nassau County Supreme Court alleging improprieties regarding the safety deposit box leased by Mrs. Levin. That action was removed to Your Honor's purview under Civil Action No.: 2:17-cv-04893-JMA-AYS (the "Prior Action") on the basis of diversity jurisdiction. In the Prior Action, Plaintiffs claimed punitive damages of $100,000 with respect to the Safety Deposit Claims alone, which suggests that their punitive damage claims in the Amended Complaint is at least that. See, Auerbach Decl., Exh. 5, Notice of Removal in Prior Action.

> [T]o show that naming a nondiverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or <u>that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court</u>.   The defendant seeking removal bears a heavy burden of proving fraudulent joiner [sic], and all factual and legal issues must be resolved in favor of the plaintiff.

Id. at 461 (emphasis added).

"Joinder will be considered fraudulent when it is established 'that there can be no recovery [against the defendant] under the law of the state on the cause alleged.'" *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 207 (2d Cir. 2001) (citations omitted) (finding a defendant to be fraudulently joined to defeat diversity jurisdiction because the amended complaint failed to state a cause of action against the non-diverse defendant).

Courts have found non-diverse corporate employees to be fraudulently joined where plaintiff's purported claims related only to their conduct performed in furtherance of their employment.  *See, e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 314-15 (5th Cir. 2002) (affirming district court holding that plaintiff fraudulently joined non-diverse corporate employee because plaintiff could not allege employee owed plaintiff a duty apart from his employment); *King v. Jarrett,* 2015 U.S. Dist. LEXIS 133740 (W.D. Tex. 2015) (non-diverse corporate employee fraudulently joined where plaintiff failed to articulate any duty the employee owed him independent of duties between plaintiff and the corporate defendant).

It is apparent from the Amended Complaint's allegations that McHale and Green acted only in furtherance of their duties when dealing with Mrs. Levin.  Longstanding

New York law is clear that "an agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or supersede his personal liability for, or to, that of his principal.'"  *Savoy Record Co. v. Cardinal Export Corp.,* 15 N.Y.2d 1, 4, 254 N.Y.S.2d 521, 523 (1964).  It is well-settled that corporate officers acting in furtherance of corporate business cannot be held liable for claims against the company.  *See Hutter v. Countywide Bank, N.A.,* 41 F. Supp. 3d 363, 375 (S.D.N.Y. 2014); *Georgia Malone & Co., Inc. v. Rieder,* 86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 496-97 (1st Dep't 2011) ("It is well-established that officers or agents of a company are not personally liable on a contract if they do not purport to bind themselves individually."); *see also Tuttle & Hughes v. Browne*, 1996 U.S. Dist. LEXIS 9555, *5 (S.D.N.Y. July 8, 1996) (noting "New York's strong presumption against finding corporate officers individually liable for the obligations of the corporations they represent."); *Bob v. Scibal Assocs.*, 2014 U.S. Dist. LEXIS 120325, *18-19 (S.D.N.Y. February 10, 2014) (dismissing claim against company employee because he owed no independent duty to plaintiff).  Accordingly, the Amended Complaint fails to state any claim against McHale or Green under New York law.

The Amended Complaint does not assert any actual claims for relief against Green or McHale.  It alleges only: (i) in 2012 Green would not let Mrs. Levin open the Box, and requested that she sign a new signature card (Docket No., 1, Exh. A,Amended Complaint ¶¶ 16-17); and (ii) in 2016 McHale told Mrs. Levin to disregard letters she received stating she owed rent, and itemized the contents of the Box after it had been opened (Docket No. 1, Exh. A, Amended Complaint ¶¶ 25, 28-30, 33-34).

Nor does the Amended Complaint seek damages specifically against either Green or McHale.  A complaint that "lumps" all defendants together by failing to distinguish their conduct fails to provide adequate notice to defendants of what they allegedly did wrong.  *See Infanti v. Scharpf*, 2008 U.S. Dist. LEXIS 45501, *7 (E.D.N.Y. June 10, 2008); *see also McCabe v. Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 91116, *6 (E.D.N.Y. July 3, 2014) (dismissing claims against defendants that plaintiff "lumped" together without pleading specifically what wrong each defendant committed).

The Amended Complaint does not, and cannot, allege that Green or McHale acted other than in furtherance of their duties as Chase employees.  Plaintiffs therefore cannot recover against either of them under New York law for a breach of contract, or any other claim.  Because it is not possible for Plaintiffs to recover anything from Green or McHale as a matter of law, Plaintiffs' joinder of them as defendants in this action is fraudulent, and the Court should disregard their citizenship in determining diversity jurisdiction.

Based on the foregoing, both the amount in controversy and diversity of citizenship requirements have been satisfied. Accordingly, the Motion must be denied as it pertains to the parties' citizenship.

## III.   PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION

In addition to seeking remand of the instant action to the State Court, Plaintiffs now seek to enjoin Defendants "from (a) re-establishing the escrow amount; and (b) taking Plaintiff's monthly payment and applying said from (1) re-establishing the escrow account until such time that the moneys in the old escrow account are accounted for; (2) taking Plaintiff's monthly payment and applying said payments to the escrow first until such time that this motion is decided and Defendants provide an accurate accounting of

all moneys charged [sic] by Chase when the loan was modified and a fully accounting of those amounts which remain unaccounted for." (Docket No. 16, Plaintiffs Memorandum of Law, at page 18). Plaintiffs ask the Court to intervene into the parties' contract in order to halt Plaintiffs' ongoing Modification payments to Defendant Chase during the pendency of the litigation. Plaintiff's request is without merit and must not be entertained.

A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor. *See, e.g.*, *Otokoyama Co. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir. 1999).

To establish irreparable harm, a party seeking preliminary injunctive relief must show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation." *N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975). Irreparable harm must be shown to be actual and imminent, not remote or speculative. *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Further, the moving party must show that injury is likely before the other requirements for an injunction will be considered. *See, e.g.*, *Rodriguez*, 175 F.3d at 227.

Plaintiffs' claim that they "will continue to pay unnecessary money toward an escrow account" is not compelling and does not rise to the threshold level to be considered "an irreparable injury." Further, sufficient facts must be alleged showing imminent and irreparable injury, not merely conclusory statements thereof. *Manicas vs.*

11

*City of Buffalo*, 39 Misc.2d 389, 240 N.Y.S.2d 825 (1963). Plaintiffs are in fact actually seeking a form of money damages – the benefit of not paying Ms. Levin's Modification payments to Defendant Chase. This admission alone vitiates Plaintiffs' request for injunctive relief in this matter.

Plaintiffs have further failed to demonstrate any probability of success on the merits, or that a balancing of hardships would tip decidedly in their favor.

For the foregoing reasons, Plaintiffs are not entitled to injunctive relief and the Motion must be denied.

## IV.  PLAINTIFFS' REQUEST FOR SANCTIONS SHOULD BE DENIED BECAUSE THEY FAILED TO COMPLY WITH THE SAFE HARBOR PROVISION OF FED. CIV. P. RULE 11

In their Motion, Plaintiffs seek sanctions pursuant to Fed R. Civ. Pro. 11 ("Rule 11") against Defendants' counsels claiming that the action was removed by Defendants "for the purpose of sealing their continuous intent not to uncover theft of money from Plaintiffs' account." (Docket No. 16, Plaintiffs' Memorandum of Law, at page 14). Not only is this accusation utterly without merit, Plaintiffs failed to comply with the safe-harbor provision of Rule 11 and therefore their motion must be denied.

Plaintiffs filed the Motion on July 30, 2018 and served it the same day via ECF. (Docket No. 16, Certificate of Service). Under Rule 11's safe harbor provision, sanctions motions are not permitted to be filed with the court until twenty-one days after service of the contested motion. Rule 11 (c)(1)(A), Fed. R. Civ. P.

The 1993 amendment to Rule 11 established a safe harbor of twenty-one days, which allows the non-movant the opportunity to withdraw or appropriately correct the contested filing in order to avoid sanctions. *Hadges v. Yonkers Racing Corp.,* 48 F.3d

12

1320, 1327-28 (2d Cir. 1995); *see* Rule 11 (c)(1)(A), Fed. R. Civ. P. Rule 11 (c)(1)(A) is referred to as a "safe harbor" because it "permits a party to escape sanctions by withdrawing an otherwise sanctionable filing within 21 days after being put on notice by the opposing party that sanctions will be sought." *See In re Global Crossing, Ltd. Securities Litigation,* 221 F.R.D. 394, 396 (S.D.N.Y. 2003). If a party files a Rule 11 motion for sanctions within the safe harbor period, sanctions are unavailable. *See Hadges* at 1327-28 (rejecting motion for Rule 11 sanctions because the record did not indicate that non-movant was served twenty-one days prior to the sanctions motion); *Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th Cir. 1997) (holding that Rule 11 is unavailable, unless the sanctions motion is served "a full twenty-one day 'safe harbor' period before it is filed with or presented to the court"). Because the Plaintiffs failed to comply with Rule 11's safe harbor provision by prematurely filing the sanctions motion within 21 days of serving the motion upon Defendants, Plaintiff's request for sanctions should be rejected as a matter of law.

Notwithstanding Plaintiffs' failure to comply with Rule 11's safe harbor provision, the request for sanctions is without merit. Plaintiffs' Motion fails to provide any evidence whatsoever that that Defendants did not have a good faith basis for filing the Removal Notice or that Defendants are seeking "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." On the contrary, removal of the instant action was objectively reasonable under the circumstances, and in fact proper. *Williams v. Int. Gun-A-Rama*, 416 Fed. Appx. 97, 99 (2d Cir. 2011). As presented above and in opposition to Plaintiffs' request for remand, Defendants established that removal was timely pursuant to 28 U.S.C. § 1446(b), and that parties are "citizens of different states"

and "the matter in controversy exceeds the sum or value of $75,000" pursuant to 28 U.S.C. § 1332(a).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request Plaintiff's Motion be denied.


Respectfully submitted,

Dated:   August 30, 2018          McCalla Raymber Leibert Pierce, LLC

                                  */s/ Michael E. Auerbach*
                                  Michael E. Auerbach, Esq.
                                  *Attorneys for Defendants,*
                                  *J.P. Morgan Chase Bank, N.A., Kevin McHale,*
                                  *Datwan Green, Brandon North, and*
                                  *Mark T. Brewer*

*Of Counsel:*

*Zeichner Ellmaan & Krause LLP*
        *Ronald M. Neumann, Esq.*
        *Bruce S. Goodman, Esq.*

14